******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ECKER, J., with whom D'AURIA, J., joins, dissenting. I would join the majority opinion but for one stubborn fact, which is that lawyers for the defendant, Mary Moritz, entered an appearance on her behalf in the original action on July 3, 2018, eleven days before the expiration of the statute of limitations. In my view, the appearance of the defendant through counsel unequivocally establishes that the defendant received actual or effective notice of the claim, in all its particulars, to bring the case within the scope of our savings statute, General Statutes § 52-592, in accordance with *Rocco* v. *Garrison*, 268 Conn. 541, 550–53, 558, 848 A.2d 352 (2004), and *Dorry* v. *Garden*, 313 Conn. 516, 526–530, 534–35, 98 A.3d 55 (2014). See *Laiuppa* v. *Moritz*, 216 Conn. App. 344, 377–79, 285 A.3d 391 (2022) (*Cradle, J.*, concurring in the result) (construing *Rocco* and *Dorry* to support conclusion that defendant in this case received actual or effective notice in original action).

This conclusion rests on three things that we know with absolute certainty. First, we know as a matter of fact that the defendant appeared in the original action eleven days before the statute of limitations lapsed when her lawyers filed an appearance on her behalf.[1] It is important to understand that the lawyers appeared on behalf of *the defendant*, not on behalf of her insurance company. Her lawyers owed the *defendant* an undivided and exclusive duty of loyalty; the fact that they may have been appointed or paid by the insurer has no bearing on the nature or extent of their agency

---

[1] The appearance was a firm appearance, filed by the law firm of Nuzzo & Roberts, LLC. A firm appearance allows any lawyer in the law firm to represent the client in connection with any particular event or proceeding relating to the case. The firm appearance in this matter was signed by Attorney Bridget McCormack Ciarlo, who signed most, if not all, of the motions and other written court filings on behalf of the defendant in the original action. The record discloses that at least one other lawyer from the firm also played a significant role in representing the defendant in the original action.

relationship with the defendant or their ethical or professional duties to her. See, e.g., *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 61, 730 A.2d 51 (1999) ("we have long held that *even* when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured" (emphasis in original)); *Higgins* v. *Karp*, 239 Conn. 802, 810, 687 A.2d 539 (1997) ("even when an attorney is compensated or expects to be compensated by a liability insurer, his or her duty of loyalty and representation nonetheless remains exclusively with the insured").[2]

The second thing we know with certainty is a point of law: when the subject matter of the information learned by an agent is within the scope of the agency, notice to the agent (here, the defendant's lawyers) is notice to the principal (here, the defendant, who is the client). The lawyers who appeared on behalf of the defendant indisputably had notice and knowledge of the entire contents of the complaint, in all of its particulars. That notice and knowledge is chargeable to the defendant as a matter of law. "[G]enerally, notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." (Internal quotation marks omitted.) *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 745–46, 573 A.2d 1211 (1990). "As stated in the

---

[2] It is irrelevant for present purposes that the insurance company had notified the defendant that it was providing a defense while reserving its rights, to an unknown extent, to contest its contractual obligation to indemnify her for any loss. The issue on appeal is whether the defendant was given actual or effective notice of the original action, not whether the insurance company might ultimately contest its duty to indemnify her. The insurer's reservation of rights did not limit the scope or nature of the agency relationship between the lawyers and the defendant in the original action or the duties that the defendant's lawyers owed to her in connection with the original action.

Restatement (Second) of Agency . . . 'a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or [on] which it is his duty to give the principal information.' " Id., 746, quoting 1 Restatement (Second), Agency § 272, p. 591 (1958); see *Link* v. *Wabash Railroad Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("[in] our system of representative litigation . . . each party . . . is considered to have notice of all facts, notice of which can be charged [on] the [party's] attorney" (internal quotation marks omitted)).

This fundamental principle of agency law applies with full force to attorneys and their clients; indeed, it operates with greater force in the attorney-client context to the extent that an attorney is charged by the professional rules of ethics with a mandatory, affirmative obligation to keep the client reasonably informed about the matter. See, e.g., Rules of Professional Conduct 1.4 (requiring lawyer to inform and consult with client regarding matters within the scope of representation); see also 1 Restatement (Third), The Law Governing Lawyers § 28 and comment (b), pp. 207–209 (2000) (explicating general rule that knowledge of attorney is attributed to client).[3]

The third thing we know, finally, is an important principle of statutory construction that the majority acknowledges is applicable to this case but then proceeds to disregard. I will quote the principle precisely as described by the majority: "Section 52-592, known as the savings statute, is designed to [e]nsure to the

---

[3] It would violate our ethics rules for an attorney to appear in a case on behalf of a putative client without authorization, and no allegation has ever been made that the lawyers appeared on the defendant's behalf without authority to do so. Indeed, the defendant is still represented on appeal by the same lawyers who originally appeared on her behalf in the original action on July 3, 2018.

diligent suitor the right to a hearing in court [until] he [or she] reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his [or her] adversary of a present purpose to maintain [the litigant's] rights before the courts. . . . *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989). 'It is well established that the purpose of § 52-592 (a) is to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his [or her] day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy [when] that can be brought about with due regard to necessary rules of procedure. . . . *Larmel* v. *Metro North Commuter Railroad Co.*, 341 Conn. 332, 345, 267 A.3d 162 (2021), quoting *Rocco* v. *Garrison*, [supra, 268 Conn. 558]. [T]he savings statute is remedial in nature . . . [and therefore] must be afforded a liberal construction in favor of those whom the legislature intended to benefit . . . . *Dorry* v. *Garden*, [supra, 313 Conn. 530]." (Internal quotation marks omitted.)

In combination, these three points explain why the lawsuit filed by the plaintiff, Paul Laiuppa, comes within the scope of § 52-592. The defendant in the present case is charged as a matter of law with having notice and knowledge of the plaintiff's claims against her no later than July 3, 2018, when she appeared through counsel in the original action nearly two weeks before the statute of limitations lapsed. This state of affairs satisfied the requirement of actual or effective notice that brings the case within the scope of § 52-592 under the standard

articulated by this court in *Rocco* v. *Garrison*, supra, 268 Conn. 550–53, and *Dorry* v. *Garden*, supra, 313 Conn. 526–30. See *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733 ("[t]he important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts" (internal quotation marks omitted)). This is true because the only purpose of such notice is to safeguard and enforce the requirement in § 52-592 (a) that the original action be "commenced within the time limited by law . . . ." The lawyers' appearance on behalf of the defendant in the original action demonstrates definitively that the purpose of the statute of limitations had been met in this case: the defendant had a law firm acting on her behalf, on a timely basis, to vigorously represent her interests in the lawsuit by gathering all available evidence and presenting all legal defenses to defeat the claims alleged in the complaint. "A plaintiff's timely filed action provides notice to the defendant and ensures that the defendant does not find itself in a situation [in which], because of the lapse of time, [the defendant] is unable to gather facts, evidence, and witnesses necessary to afford . . . a fair defense. . . . Statutes of limitations also allow persons, after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . ." (Citations omitted; internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 768–69, 104 A.3d 713 (2014).

The majority has no persuasive response to these points. Instead, it relies on pronouncements, unaccompanied by explanation or justification, requiring the defendant's personal, physical receipt of the actual writ, summons, and complaint as necessary to satisfy the actual or effective notice requirement of *Rocco* and *Dorry* when

there has been insufficient service of process. The question we must ask is where the majority finds its requirement that a case has not been "commenced" under § 52-592 (a) and, therefore, does not come within its scope, unless and until the legal process is physically delivered into the defendant's actual (not constructive) possession. The statute itself says nothing of the kind. To the contrary, it expressly provides that it applies when there has been "insufficient service" of process, a defect that often, though not always, will result in no physical delivery of the process to the defendant. General Statutes § 52-592 (a). Our case law on the subject, although providing no definitive answer to the question presented in this case, clearly teaches that actual or effective notice—not compliance with the statutes governing service of process—is the critical consideration that determines whether a lawsuit falls within the scope of § 52-592. Again, these cases hold that a lawsuit is "commenced" for purposes of § 52-592 (a) if the defendant received actual or effective notice of all material information contained in the writ, summons, and complaint. See *Dorry* v. *Garden*, supra, 313 Conn. 526–30, 534–35; *Rocco* v. *Garrison*, supra, 268 Conn. 550–53, 558. As Judge Cradle aptly observed in her concurring opinion in the Appellate Court, "[i]n neither [*Rocco* nor *Dorry*] . . . did [this] court hold that the receipt of a copy of the summons and complaint was *required* to commence an action pursuant to the savings statute. In other words, although [this court's] decisions in *Rocco* and *Dorry* hold that actual notice by way of receipt of a copy of the summons and complaint is *sufficient* to commence an action within the meaning of § 52-592, neither case establishes that [the] receipt of the summons and complaint is the *exclusive* manner by which an action may commence under the statute." (Emphasis in original.) *Laiuppa* v. *Moritz*, supra, 216 Conn. App. 377–78 (*Cradle, J.*, concurring in the result).

The majority misconstrues *Rocco* and *Dorry* as holding that actual or effective notice requires actual notice in the form of the defendant's personal receipt of the writ, summons, and complaint. Neither case imposes such a requirement. The issue in both *Rocco* and *Dorry* was not whether notice by way of actual, physical receipt was *required* to trigger application of the savings statute but whether such notice was *sufficient* to do so. Those cases unsurprisingly hold that actual receipt provides actual or effective notice and, therefore, is sufficient to trigger application of § 52-592. A sufficient condition, however, is not the same as a necessary condition, and neither *Rocco* nor *Dorry* goes beyond concluding that actual receipt of legal process was sufficient to bring the case within the scope of the savings statute. If the majority in the present case chooses to impose an actual receipt requirement, then it has the corresponding obligation to justify that holding. Our precedent does not carry that load.

The sole explanation the majority provides to justify its holding is its observation that, "through receipt of the summons and complaint, the defendant not only knows of the existence of the action, but also knows the identity of the parties, the nature of the claims against him or her, and the court in which the claims are being brought, so that the defendant can protect his or her rights and defend the action." This assertion demonstrates with remarkable precision why the majority reaches the wrong conclusion in the present case. As the majority acknowledges, the fundamental purpose of the notice requirement under § 52-592 is to provide the defendant with the necessary information, within the limitation period, "so that the defendant can protect his or her rights and defend the action." See, e.g., *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733. The facts of the present case demonstrate conclusively that physical receipt of the writ, summons, and complaint

is not the only means by which a defendant can obtain all of the information necessary to investigate the claims and to mount an effective defense on a timely basis. Even without the defendant's physical receipt of process, her lawyers filed appearances and began actively representing her interests in the original lawsuit weeks before the expiration of the statute of limitations. Notice also may be effective, for example, if the defendant is informed of the pendency of an action and provided with sufficient information to permit the investigation of the claims and the preparation of a defense. See, e.g., *Weinstein & Wisser*, *P.C.* v. *Cornelius*, Docket No. HHD-CV-15-6058159, 2015 WL 6558462, *6 (Conn. Super. October 7, 2015) (concluding that defendant had effective notice of action under § 52-592 "because he had notice of the judgment liens, went to the Superior Court to make inquiry, had access to the court files, and knew enough to secure a copy of the return of service to initiate what was ultimately the successful process of dismissing the case against him").

Investigating claims and preparing a defense are exactly what defense lawyers do for their clients, which is why I would conclude on this record that the official appearance of counsel for the defendant in the original action nearly two weeks before the expiration of the statute of limitations demonstrated that the defendant was provided with effective notice of that lawsuit and, therefore, that the original action was timely "commenced" within the meaning of § 52-592 (a). The goal of the savings statute is not to enforce the technical requirements of Connecticut law governing service of process, but to make certain that a plaintiff whose original action would have been timely but for certain procedural or jurisdictional defects (including insufficient service of process) will nonetheless have a chance to reinstitute the lawsuit so that it can be decided on the merits. See, e.g., *Plante* v. *Charlotte Hungerford*

*Hospital,* 300 Conn. 33, 49, 12 A.3d 885 (2011) ("[T]he accidental failure of suit statute, now codified [at] § 52-592, originally was enacted in 1862; Public Acts 1862, c. 14; see *Baker* v. *Baningoso,* 134 Conn. 382, 386, 58 A.2d 5 (1948); to avoid the hardships arising from an unbending enforcement of limitation statutes. . . . Although there is no relevant printed legislative history about § 52-592 due to its age . . . it is well established in our long line of case law interpreting the statute in other contexts that § 52-592 (a) is remedial and is to be liberally interpreted." (Citations omitted; internal quotation marks omitted.)).

Lest there be any misunderstanding, none of the foregoing means that a lawyer is a client's agent for purposes of service of process, and nothing I say herein is inconsistent with the well established principle that, unless authorized by statute or consent, or waived by words or conduct, service of process on a party's attorney is defective. See, e.g., *Sodhi* v. *Nationwide Mutual Ins.,* Docket No. CV-96-0564554, 1998 WL 161166, *1 (Conn. Super. March 10, 1998) ("[i]n general . . . an attorney is not authorized by general principles of agency to accept service of original process [on] behalf of a client" (internal quotation marks omitted)), quoting *George* v. *Delpo,* Superior Court, judicial district of Waterbury, Docket No. CV-94-0124137 (January 2, 1997) (18 Conn. L. Rptr. 519, 519). Likewise, nothing in this opinion challenges the well established principle that the appearance of counsel does not waive a party's right to challenge the court's personal jurisdiction. See, e.g., *Pitchell* v. *Hartford,* 247 Conn. 422, 432, 722 A.2d 797 (1999) ("the filing of an appearance on behalf of a party, in and of itself, does not waive that party's personal jurisdiction claims" (footnote omitted)). The defendant moved to dismiss the original action for insufficient service of process, and the motion was granted, as it should have been. My point here is simply that

dismissal of a lawsuit on procedural or even jurisdictional grounds in no way renders the case ineligible for resurrection under the savings statute.

Simply put, the issue before us does not ask us to inquire about the sufficiency of service of process necessary to commence an action under general principles of Connecticut law, or whether a lawyer may appear on a client's behalf to seek dismissal of the complaint for insufficient service of process depriving the court of personal jurisdiction over a defendant, or whether a plaintiff may effectively serve the defendant's lawyer with legal process. Instead, the issue that must be decided in the present case is whether, *on this record*, the defendant had actual or effective notice of the plaintiff's original action such that the action was "commenced" under § 52-592 (a). This involves a very different inquiry. See *Dorry* v. *Garden*, supra, 313 Conn. 529 ("in *Rocco*, this court recognized that the phrase 'commenced within the time limited by law' [in § 52-592 (a)] cannot mean effectuating proper service, and that effective notice to a defendant is sufficient"); *Rocco* v. *Garrison*, supra, 268 Conn. 550 ("If the savings statute requires effective commencement of the original action, and commencement requires valid service of process . . . then any failure of service of process would require us to conclude that no action had been commenced and that the statute does not apply. This would render superfluous one of the principal purposes of the savings statute, namely, to save those actions that have failed due to insufficient service of process.").[4]

---

[4] Moreover, the present case involves more than mere notice to the defendant's counsel of the existence or contents of a writ, summons, and complaint. Counsel for the defendant actually appeared on behalf of the defendant in the original lawsuit and actively began litigating the case by filing, and obtaining a ruling on, a motion for permission to file supplemental discovery. The facts of the case therefore do not require us to decide whether the client receives effective notice of the lawsuit for purposes of § 52-592 when the lawyer receives, formally or informally, a copy of the writ, summons, and complaint but does not appear in the lawsuit on the client's behalf. Nor does this case involve any claim that the plaintiff failed to make

A case should be decided in light of its particular facts. As a general proposition, a plaintiff may have difficulty proving that a defendant had effective notice sufficient to satisfy the requirements of § 52-592 without evidence of physical receipt of the writ, summons, and complaint. But it is extremely difficult for me to understand how it is possible to say that the defendant in the present case did not have effective notice of the original action when her lawyers appeared on her behalf and participated in the litigation that resulted in its dismissal. The defendant suffered no actual or even possible prejudice as a result of the defective service. To the contrary, the only difference that improper service made is that the case was dismissed on that ground instead of proceeding to an adjudication on the merits. That point, in my view, perfectly describes why the case comes squarely within the scope of § 52-592.

I respectfully dissent.

--------------------

a good faith effort in the original action to serve the defendant in accordance with law.